This is an action begun 8 April, 1920, by the highway commissioners of Woodsdale Township in Person County against the Central Highway *Page 611 
Commission of Person County, to restrain them from building a road in Woodsdale Township. The object of the action is to determine, under the provisions of ch. 74, Public-Local Laws 1917, whether the township commission or the county commission have the right and power to locate the road to be constructed in the township under the provisions of said act.
At the hearing before Calvert, J., at chambers in Hillsboro 3 May, 1920, he refused a mandamus to require the county highway commission to build the road designated by the plaintiff, but restrained the defendant from using any of the money allotted to Woodsdale Township in the construction of the Chub Lake Road, or any other road in said township, and ordered the Central Highway Commission of Person County to adopt rules and regulations for the laying out of roads by the highway commissioners of the several townships of the county, such roads to be constructed by the Central Highway Commission. The defendant appealed from that part of his Honor's order enjoining the construction of the Chub Lake Road, and directing the making and promulgation of general rules and regulations. The plaintiff appealed from that part of the order declining to issue a mandamus compelling the construction of the road designated by the township highway commission.
The commissioners of both the township and county commission are made parties individually. This at most is surplusage, and immaterial.
This action is to obtain a construction of ch. 74, Public-Local Laws 1917, which authorized the commissioners of Person County to submit to the voters the question of issuing bonds to build and improve public roads. The validity of this act was before us, and sustained in Wagstaff v.Commission, 177 N.C. 354. Sec. 4 of said chapter provides that at the time of submitting the question of issuing bonds to the electorate there should be elected in each township three persons as township highway commissioners.
Sec. 5 provides that if the majority of the votes cast are in favor of issuing the bonds the township highway commissioners from the 9 townships in the county should meet and elect three persons as the Central Highway Commission of Person County. The bond issue was approved by the voters of the county in March, 1917, and thereafter, as directed by the act, the township highway commissioners elected the defendants, the Central Highway Commission of Person County. *Page 612 
The bond issue authorized was $300,000 — $25,000 of which was to be apportioned to, and spent in each of the 9 townships of the county, and the remaining $75,000 was to be used in the retirement of Roxboro Township bonds which had been issued by virtue of ch. 449, Public-Local Laws 1915.
Sec. 7, ch. 74, aforesaid, authorizes the Central Highway Commission to "sue and be sued," to make contracts, to acquire property, to exercise such other rights and privileges as are incident to the powers conferred, to construct, improve, and maintain the public roads of the county, buy, or rent teams, machinery and implements as may be necessary, and have all other rights and powers "for control and management" as were then vested in the county commissioners of Person County, and made it the duty of the Central Highway Commission to make general rules and regulations for layingout, constructing, altering, repairing, and building public roads in the several townships by the township highway commissioners; and that the latter shall, under the general rules and regulations prescribed by the Central Highway Commission, have charge of and management of the layingout, constructing, altering, repairing, and building of the public roads of the several townships of Person County. Provided all roads shall be laid out and constructed under the supervision of a competent and expert road engineer acceptable to the Central Highway Commission.
It was admitted at the hearing that the defendant, the Central Highway Commission, had not made and promulgated general rules and regulations for laying out public roads, as prescribed in sec. 7, but had themselves laid out and begun the construction of public roads in the several townships, paying for same out of the funds apportioned to each township without having consulted the township highway commissioners. In the fall of 1919 the Central Highway Commission laid out the Chub Lake Road running through the southwestern portion of Woodsdale Township, and in April, 1920, began the building of said road, to be paid for out of the $25,000 allotted to Woodsdale Township. The highway commissioners of said township protested in the fall of 1919 against the construction of the Chub Lake Road, but the Central Highway Commission began its construction in April, 1920. The Woodsdale Township highway commissioners, at a regular meeting in the spring of 1920, designated by resolution the road which they desired constructed in that township, and notified the Central Commission, which, however, ignored such resolution and began the construction of the said Lake Road.
The road designated by the township highway commission runs east and west from Daysville on the central highway to Woodsdale on the Norfolk 
Western Railroad in the center of said township, a distance of nearly three miles, and thence northwestwardly to Cunningham, *Page 613 
through the center of the township and connecting with the central highway and said railroad station. The said central highway runs north and south through the central part of Person County. On said central highway, near where it intersects with this road, is the $40,000 high school building.
[EDITORS' NOTE: THE MAP IS ELECTRONICALLY NON-TRANSFERRABLE.], SEE 172 N.C. 613.]
It is alleged that 80 per cent of the people of Woodsdale Township petitioned that the road be laid out as above stated, which runs through a section thickly populated by small farmers. Person County is rectangular in shape, having 9 townships — 3 in the southern part, 3 in the center, and 3 in the northern part. The Norfolk Western Railroad runs north and south through the center of the county. Helena *Page 614 
is a railroad station in the southern part of the county, and used by the people of the three lower townships. Roxboro is railroad station used by the people of the three central townships, and Woodsdale is the railroad station used by the people in three northern townships — Holloway, Woodsdale, and Cunningham. The three said railroad stations thus each serve the three said sections of the county, and the road selected by the highway commissioners of Woodsdale will be used by the people of each of the three northern townships in going to the railroad station connecting with the central highway and the high school.
It is alleged that the Central Highway Commission is undertaking to have all the roads radiate from Roxboro in preference to the roads running east and west. This, it seems, will isolate the northern and southern parts of the county from their railroad stations, and force the business to Roxboro, and will seriously hamper also the convenience of the schools. There are other objections made to the alleged greater expense and inconvenience of selecting the Chub Lake Road, which the Central Highway Commission has designated to be built out of the $25,000 appropriated to Woodsdale Township.
The controversy is whether the Central Highway Commission or the township highway commissioners, under the proper construction of the act, shall choose and lay out the roads to be worked and maintained in the respective townships.
This question is not without difficulty, but looking at it as a whole, in order to determine the legislative intent, it seems to us that the intention of the act is that the township commissioners shall designate what roads in their respective townships should be laid out, because they are presumed to be most conversant with the wishes and needs of their respective townships, as a measure of local self-government, but to the Central Highway Commission is committed the supervision of the construction and maintenance of the roads thus located by the township commissioners as to the manner in which they shall be built, the purchase of the machinery, team, and other agencies for the construction of said road, and in every respect as to control and management. The location of the roads is the only matter committed to the township commissioners not subject to the supervision of the central commission.
The language of the act bears this as the most reasonable construction, and indeed, if it is not the true construction there seems to be no reason whatever for the creation of the township highway commissioners for the general supervision of the construction and maintenance is remitted to the central commission in order, doubtless, to make the construction and control uniform throughout the county.
It is suggested that if this were done, the roads selected by the township commissioners might not connect with the roads of the adjoining *Page 615 
townships. But read in the light of the geographical situation above stated, each tier of townships is interested in having the roads run east and west to connect with the railroad stations in that tier, and to connect up with their public schools. It is charged that the Central Highway Commission wishes to have the roads run north and south, forcing business to Roxboro as the county center, and that this would cut off the people in the other townships from their natural outlet at the nearest railroad station. However this may be, it would seem that the act, as we read it, was intended to authorize the highway commissioners of each township to lay out their own roads, which are then to be constructed under the rules and regulations prescribed by the Central Highway Commission.
This construction is peculiarly appropriate, and the natural construction. It is in line with the State regulation under which each county locates its roads, which are to be constructed under rules and regulations and under the general supervision of the State Highway Commission, and where the United States Government has appropriated funds for road construction the roads adopted are located by the State, but the construction, so far as affects appropriations from the Federal Government, is under rules and regulations prescribed by the general Government.
Sec. 7 of this act provides that the Central Highway Commission shall provide such rules and regulations as may be necessary for the "control and management of the public roads of Person County, which is invested with authority to construct, improve, and maintain the public roads of the county, and shall purchase or hire the teams, machinery, and implements, and fix the compensation of the employees, and exercise all other rights and powers for the control and management as may now be vested in the board of county commissioners in that county." This transfers to the Central Highway Commission the authority of the county commissioners over the roads only to that extent.
Sec. 12 provides that the Central Highway Commission shall adopt general rules and regulations for "opening, constructing, laying out, improving, changing, altering, or repairing the public roads of the county, and for working or improving the same." This section does not give the said Central Highway Commission the authority to lay out,i. e., to locate the said road, but merely to provide the general rules and regulations for such purpose.
Sec. 7 provides that said township highway commissioners shall, under such general rules and regulations prescribed by the Central Highway Commission, "have charge of and management of the laying out (i. e., locating) constructing, altering, repairing, and building the public roads of the several townships; provided all the roads shall be laid out and *Page 616 
constructed under the supervision of a competent and expert road engineer acceptable to the Central Highway Commission."
There seems to be no doubt that as to the real point in controversy here, that the laying out, i. e., the location of the roads to be worked, is left with the township highway commissioners, but that the roads are to be constructed and repaired under the rules and regulations, and under the general supervision of the Central Highway Commission. It is true that both the central and township commissioners are vested with authority to construct, but the construction by the latter is evidently to be under the general supervision of the Central Highway Commission.
We think the correct construction of the act cannot be better stated than in the plaintiff's brief as follows: "The township highway commissioners have the authority to designate and lay out the roads in their respective townships to be built out of the amount apportioned to them arising from the issue of bonds, i. e., $25,000, and the Central Highway Commission has the general authority to construct the roads after they have been designated and laid out by the township highway commissioners. This removes all conflict in the statute. Both bodies are given the right to construct roads, but only the township highway commissioners are given the authority to lay out the roads. The only power that the Central Highway Commission has with respect thereto is the adoption of general rules and regulations guiding the township highway commissioners in laying out the roads. This construction reconciles all apparent conflicts, and gives effect to every part of the statute, and effectuates the intent of the Legislature." This construction seems to be in accordance with the geographical situation above recited. And also with the history of road legislation in Person County. Laws 1913, ch. 268, when submitted to the voters of Person County, was not approved by them, and on inspection of that statute we find no authority therein given to the township commissioners to control the laying out of the roads in their respective townships, and it is probable, as suggested, that this was the cause that the act was not approved at the ballot box; ch. 449, Laws 1915, was then submitted, which was applicable only to Roxboro Township. Then when the act of 1917 was passed giving the township highway commissioners in each township the right to lay out the roads, and refunding to Roxboro Township $75,000 it had voted, the act was approved by the popular vote.
The defendants contend that this act gives to the Central Highway Commission the same authority over the roads of the county "as were then vested in the county commissioners." But this was qualified by the words immediately preceding: "and the Central Highway Commission shall have all other rights and powers for the control and management *Page 617 
(of said roads) as may now be vested in the board of county commissioners of Person County."
As already said, the Federal Government, in the appropriation for roads, leaves to the State the designation of the highways within the States. The State authorities leave to the counties the designation of the highways in each county, and this act evidently intends that the county commissioners of Person County should leave to the township highway commissioners the location of the roads in their townships. This construction also will prevent the complaints that have some time been made that county commissioners locate the roads most convenient or advantageous for their own sections of the county. This act empowers the township of Woodsdale, if it so chooses, to select an east and west road connecting up the different parts of the township with the railroad station in the center, whereas, the Chub Lake Road selected by the Central Highway Commission, aside from the objections urged on account of great expense, etc., would open up merely one corner of the township with Roxboro. It seems to us the intent of this act was to give each township the right to select and locate the roads in the township according to the will of the people therein, the entire county system to be under the control and management, both in construction and maintenance, of the Central Highway Commission.
The judgment below will be entered in accordance with this opinion, and to that extent the judgment below is
Affirmed.